**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Misc. Case No. _____ |
| v. | ) ) | |
| EVERQUOTE, INC., | ) ) | |
| Defendant. | ) ) | |
| | ) | |
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Underlying action pending in the U.S. District Court for the Northern District of |
| v. | ) ) | Illinois, Eastern Division |
| ALLSTATE INSURANCE COMPANY, a Delaware limited liability company, | ) ) ) | Case No. 1:19-cv-06662 |
| Defendant. | ) ) | |

**MOTION TO COMPEL COMPLIANCE WITH
RECORDS SUBPOENA ISSUED BY UNITED STATES
<u>DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS</u>**

109056_7

**Table of Contents**

I.      Introduction ........................................................................................................1

II.     The Illegal Calls and Everquote's Refusal to Comply with Plaintiff's Subpoena .............1

III.    Argument ...........................................................................................................5

        1.  The Subpoena is Not Contingent on Motions Pending in the Underlying Action ........5

        2.  Agreements and Communications with Allstate, Its Agencies, and Any Third-Party Vendors Involved in the Prerecorded Calls (Reqs. 5-10) ...................................7

        3.  Source of the Telephone Numbers Called (Reqs. 4, 16-17) ......................................11

        4.  Class Lists and Related Data Dictionaries (Reqs. 18-19, 30) ....................................12

        5.  Scripts for the Prerecorded Calls and Messages (Req. 15) ........................................14

        6.  Policies, Practices and Procedures for the Prerecorded Calls (Reqs. 21-23) .............15

        7.  TCPA Compliance Documents Related to the Calls (Req. 24-26) ............................15

        8.  Everquote's Failure to Provide a Privilege Log .......................................................16

109056_7

## Table of Authorities

**Cases**

*Addamax Corp. v. Open Software Found.*, 148 F.R.D. 462 (D. Mass. 1993) .............................13

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540 (6th Cir. 2014) .................13

*Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publrs., Inc.*,
    36 F. Supp. 3d 417 (S.D.N.Y. 2014) ..................................................................................13

*Bakov v. Consol. World Travel*, 2019 U.S. Dist. LEXIS 211399 (N.D. Ill. Dec. 9, 2019) ............7

*Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014) .........................................16

*Behrend v. Comcast Corp.*, 248 F.R.D. 84 (D. Mass. 2008) .......................................................13

*Bellenger v. Accounts Receivable Mgmt.*, 2019 U.S. Dist. LEXIS 153672
    (S.D. Fla. 2019) ............................................................................................................11, 12

*Braver v. NorthStar Alarm Services, LLC*, 2019 U.S. Dist. LEXIS 118080
    (W.D. Okla. July 16, 2019) ............................................................................................7, 8

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) ...............................11

*Cabrera v. Gov't Emps. Ins. Co.*, 2014 U.S. Dist. LEXIS 90810 (S.D. Fla. July 3, 2014) ...........15

*Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 746 F. App'x 460 (6th Cir. 2018) ...................8, 14

*Donnelly v. NCO Financial Systems*, 263 F.R.D. 500 (N.D. Ill. 2009) .........................................9

*Gebka v. Allstate Corp.*, No. 19-cv-06662, 2021 U.S. Dist. LEXIS 41078
    (N.D. Ill. Mar. 4, 2021) ................................................................................................9, 13

*Henderson v. United Student Aid Funds, Inc.*, 2015 U.S. Dist. LEXIS 107342
    (S.D. Cal. July 28, 2015) .......................................................................................8, 11, 13

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) ...................7, 8, 16

*In re Collecto, Inc.*, 2016 U.S. Dist. LEXIS 92619 (D. Mass. 2016) ...........................................12

*Key v. Integrity Surveillance Sols., Inc.*, 2015 U.S. Dist. LEXIS 163929
    (E.D. Mich. Dec. 8, 2015) ..............................................................................................12, 13

*Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276 (N.D. Cal. 2015) .................................14

*Martin v. Global Mktg. Research Servs.*, 2015 U.S. Dist. LEXIS 140530 (M.D. Fla. 2015) .......13

*Merch. Consulting Grp., Inc. v. Beckpat, LLC*, 2018 U.S. Dist. LEXIS 130716
    (D. Mass. July 11, 2018) ....................................................................................................5

*Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240 (N.D. Ohio 2017) ........................14

iii

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ................................................2

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245
    (11th Cir. 2015) ..................................................................................................7

*Paul v. Syndicated Office Sys.*, 2013 U.S. Dist. LEXIS 191440 (S.D. Fla. Feb. 28, 2013) ..........15

*Productos Mistolin, S.A. v. Mosquera*, 141 F.R.D. 226 (D.P.R. 1992) ...........................................5

*Pub. Serv. Co. v. Portland Nat. Gas*, 218 F.R.D. 361 (D.N.H. 2003) ......................................5, 6

*Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582 (S.D. Cal. June 17, 2013) ...........13

*Taylor v. Universal Auto Grp. I, Inc.*, 2015 U.S. Dist. LEXIS 66083
    (S.D. Ohio May 20, 2015) ........................................................................10, 13

*Whiteamire Clinic, P.A., Inc. v. Quill Corporation*, 2013 U.S. Dist. LEXIS 136819
    (N.D. Ill. Sept. 24, 2013) ...................................................................................12

## Other Authorities

Fed. R. Civ. P. 26(b)(5)(A) ..........................................................................................16

Fed. R. Civ. P. 45(e)(2)(A) ..........................................................................................16

Fed. R. Civ. P. 45(g) .....................................................................................................5

*In re Joint Petition Filed by Dish Network, LLC, et al. for Declaratory Ruling Concerning*
    *the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574 (2013) ...........................7

L.R., D. Mass. 34.1(e) ..................................................................................................16

Restatement (Third) of Agency ....................................................................................10

iv

Pursuant to Fed. R. Civ. P. 45, Plaintiff, Thomas Gebka, respectfully moves the Court to compel EverQuote, Inc. ("Everquote") to comply with a records subpoena issued by the United States District Court for the Northern District of Illinois in a putative class action pending there styled *Gebka v. Allstate Ins. Co.*, No. 1:19-cv-06662 (the "Underlying Action"). The subpoena was to be complied with in this District, and it seeks merits and class discovery that is indispensable to Plaintiff's and the putative class members' claims for certain illegal telephone calls.

## I.      Introduction

Everquote is a vendor Allstate agencies hire to generate "leads" by robo-calling telephone numbers without consent to advertise and encourage the purchase of Allstate insurance. Plaintiff is one of the persons who received telemarketing calls made or commissioned by Everquote at the behest of an Allstate agency—despite the fact that his telephone number was already on the National Do Not Call registry. Because Everquote's records regarding the calls, the downstream vendors, and the other people called are necessary for the Underlying Action, Plaintiff subpoenaed Everquote. Everquote did not comply. Plaintiff has now spent months working with Everquote in an attempt to avoid filing this Motion, but Everquote *still* has not complied with the subpoena, instead only producing a half-dozen heavily-redacted documents. Therefore, Plaintiff now respectfully asks this Court to compel Everquote to comply with the subpoena.

## II.     The Illegal Calls and Everquote's Refusal to Comply with Plaintiff's Subpoena

Plaintiff filed the Underlying Action in 2019, alleging the Allstate Insurance Company ("Allstate") and its agencies engaged in an illegal telemarketing scheme to advertise Allstate insurance via unsolicited telephone calls to persons who had no prior relationship with Allstate and had registered their numbers on the National Do Not Call registry. *See* Second Amended

Complaint, ECF No. 95 (hereinafter cited "*SAC*"), at ¶¶ 2-3, 33, 120-21.[1]

The Underlying Action claims the calls violated the Telephone Consumer Protection Act ("TCPA"), 47 C.F.R. § 64.1200(a)(2) and (c)(2), which was enacted to address widespread public outrage about the proliferation of automated and prerecorded telemarketing calls Congress rightly regarded as an invasion of privacy. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371-72 (2012).

Discovery in the Underlying Action shows that Allstate's agents, pursuant to Allstate's direction and encouragement, engaged various third-party vendors to generate "leads" by robo-calling telephone numbers obtained from the Internet to advertise and encourage the purchase of Allstate insurance. *See SAC* ¶¶ 26-29, 86-92. Plaintiff seeks to represent classes of persons who received telemarketing calls made or commissioned by any of Allstate's third-party vendors, such as Everquote. *Id.* ¶¶ 61, 88-92, 120-21.

Roughly ten months after the Underlying Action was filed, with the parties on the verge of completing written discovery, Plaintiff received yet another telemarketing call on behalf of Allstate, this time using an artificial and/or prerecorded voice (hereinafter, one of the "prerecorded calls"). *SAC* ¶¶ 50-53. To trace who was calling, Plaintiff provided a tracking name and information he has never otherwise used. *Id.* ¶¶ 54-57. Within less than one hour later, an Allstate agency in Mississippi had received Plaintiff's tracking name from Everquote and called him to advertise Allstate insurance. *Id.* ¶¶ 58, 61; *see also Tom Boyd Lead* (Allstate agency's Everquote portal reflecting tracking name, "Contact Attempted"), attached as **Exhibit 1**. The Allstate agency subsequently left Plaintiff several similar voicemails. *SAC* ¶¶ 59-60. Ultimately, the agency sent Plaintiff an Allstate insurance quote, and the agency's production pursuant to Plaintiff's subpoena confirms his name was obtained from Everquote. *Id.* ¶¶ 61-64.

---

[1] The citation format "ECF No. __" herein is used to cite pleadings filed in the Underlying Action.

109056_7

Accordingly, Plaintiff served Everquote with a subpoena seeking call records and other merits and class discovery relevant to the prerecorded calls. *See Subpoena*, attached as **Exhibit 2**. The subpoena was personally served on Everquote via its registered agent on October 14, 2020. *Service Affidavit*, attached as **Exhibit 3**. After Plaintiff agreed to an extension to comply, Everquote served 43 pages of boilerplate objections and argument along with zero documents. *See Objections*, attached as **Exhibit 4**. Plaintiff immediately scheduled a call.

During that November 30 conferral, in an effort to avoid judicial intervention and minimize any burden, Plaintiff proposed that Everquote comply in stages, starting with records identifying the class of people who received prerecorded calls and the agreements and communications relevant to the existence of an agency relationship between Everquote, any third-parties involved in the prerecorded calls, and Allstate. Everquote declined, instead producing just six (6) documents—none of which identifies class members or is an agreement or communication relevant to agency. But one document confirms Everquote provided Plaintiff's tracking name and information to the Mississippi Allstate agency and suggests Everquote paid a third-party to make the prerecorded calls to generate leads.

During another meet and confer call on December 14, 2020, Everquote confirmed it refuses to produce its agreements with Allstate and claimed it did not place the prerecorded calls, while dodging the questions of whether it knows who did and whether it paid any third-party in connection with the prerecorded calls. Everquote also asserted it received Plaintiff's (tracking) name and information because he went to a website and entered it. This assertion has no basis in fact. The only time Plaintiff has ever used the fictitious tracking name was during the prerecorded call. Thus, the fact that Everquote had the tracking name confirms Everquote received it from the illegal prerecorded call.

3

At a minimum, Everquote has records of Plaintiff and every other "lead" it paid a third-party to generate and then sent to an Allstate agency for further solicitation.  Furthermore, those leads whose information Everquote obtained and forwarded to Allstate is only part of the prerecorded call class, which also includes people who received prerecorded calls but refused to provide their information to receive an insurance quote.  Thus, Everquote's records identifying the latter category of persons are also necessary.

Following the December 14 meet and confer, in additional attempts to avoid consuming judicial resources or at least narrow the issues, Plaintiff again requested that Everquote at least produce its third-party agreements and communications relevant to agency.  *See Meet & Confer Email Thread* at 9-10, 13, attached as **Exhibit 5**.  These efforts too were unfruitful.  *See id.* at 8-9.  Everquote refused to produce any communications, instead standing on its litany of boilerplate objections while still offering no detail about any anticipated cost associated with the hyperbolic if not non-existent burden.  *Id.* at 9.  Everquote also admitted it has an agreement with the third-party it received Plaintiff's tracking name and information from—which third-party could have only received it from the prerecorded call—but Everquote refuses to produce its agreement with that third-party unless, *inter alia*, Plaintiff withdraws every other request in the subpoena.  *Id.* at 8.  Everquote's position is untenable.

Plaintiff has bent over backwards to work with Everquote to obtain the necessary class and merits evidence while minimizing any burden, only to be met with Everquote stonewalling except as to the most basic requests, and as to those, baselessly attempting to delay compliance in hopes that data indispensable to the prerecorded call claims will be lost in the interim.  Therefore, Plaintiff respectfully asks this Court to compel Everquote to comply with the subpoena in its entirety.

109056_7

III.   **Argument**

Rule 45 provides that "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."  Fed. R. Civ. P. 45(g).  "A failure to comply with a subpoena thus can be punished as a contempt of court."  *Pub. Serv. Co. v. Portland Nat. Gas*, 218 F.R.D. 361, 362 n.2 (D.N.H. 2003); *Productos Mistolin, S.A. v. Mosquera*, 141 F.R.D. 226, 228 (D.P.R. 1992) ("defiance of a subpoena . . . exposes the defiant witness to contempt sanctions"); *see also Merch. Consulting Grp., Inc. v. Beckpat, LLC*, 2018 U.S. Dist. LEXIS 130716, at *9 n.8 (D. Mass. July 11, 2018) (acknowledging discretion pursuant to Advisory Committee notes to first order compliance with subpoena).

   **1.   The Subpoena is Not Contingent on Motions Pending in the Underlying Action**

Everquote is attempting to condition compliance with the subpoena on the outcome of various motions that are or were pending in the Underlying Action.  By way of background, Everquote's list of conditions-precedent to the very minimal subpoena compliance Everquote has offered began with (1) a request for the agreed confidentiality order in the Underlying Action to be amended so that non-parties can designate documents confidential.  *See Nov. 2020 Email* at 1, attached as **Exhibit 6**.  The list then ballooned, with Everquote refusing to produce its agreement with the third-party who sent Everquote Plaintiff's tracking information unless: (2) Plaintiff's motion to amend the complaint in the Underlying Action was granted; (3) Allstate's motion to stay the Underlying Action was denied; and (4) Plaintiff withdraws *every* other request in the subpoena. *See* Ex. 5 at 6 (¶ 3), 8.  Now that those first three conditions are moot, Everquote has started creating new conditions-precedent to compliance.  *See* Ex. 5 at 2 (noting in ¶ 3 filing of motion in Underlying Action, creating new condition related to decision of that motion which is now moot).[2]

---

[2] Everquote's new condition to compliance was mooted when Plaintiff filed the Second Amended Complaint.  *See* ECF No. 95.  Everquote's first condition above was mooted by entry of an amended agreed confidentiality order that

There is no merit to Everquote's insinuation that Plaintiff's subpoena is not fully-effective because of a pending motion. "[S]ubpoenas . . . are court orders." *Portland Nat. Gas*, 218 F.R.D. at 362 n.2. Plaintiff's subpoena does not condition compliance on the outcome of any pending motion. Rather, it is an unconditional court order to comply by the date and time set forth therein.

Furthermore, both judges an in the Underlying Action already implicitly approved of Plaintiff subpoenaing Everquote. Indeed, Plaintiff asserted in both the motion for leave to amend and the motion to modify the scheduling order that he had issued a subpoena to Everquote for records related to the prerecorded calls. *See* ECF No. 58 ¶ 6; ECF No. 60 ¶ 11. District Judge Coleman and Magistrate Cummings subsequently issued several orders related to those motions, none of which questioned the subpoena much less ordered Plaintiff to withdraw it pending resolution of either motion. *See* ECF Nos. 62, 63, 69. Instead, Plaintiff was then granted leave to add the claims which are the subject of the instant subpoena. *See* ECF Nos. 77, 94. Moreover, Allstate has not objected to the subpoena.

Therefore, Everquote's bid to delay compliance should be rejected because the discovery sought is relevant as detailed below.

---

allows non-parties to designate. *See* ECF No. 91 at §§ 3-4. Everquote's second condition above is likewise moot, as Plaintiff's motion for leave to amend the complaint was granted, *see* ECF Nos. 77, 94, and the operative Second Amended Complaint asserts individual and class claims for the prerecorded calls, *see* ECF No. 95. While Allstate moved to stay the Underlying Action pending the Supreme Court's opinion in *Facebook, Inc. v. Duguid*, No. 19-511, *see* ECF Nos. 64, 71-72, *Facebook* has now been decided, Plaintiff filed a Second Amended Complaint removing the claims affected by the *Facebook* holding, that holding does not impact the prerecorded calls related to Everquote, and the Underlying Action is not stayed. As such, the motion to stay will obviously be denied as moot, and Everquote's third condition above is moot. Although Plaintiff has a pending motion to modify the scheduling order in the Underlying Action, that motion will clearly be granted since Allstate does not oppose it, *see* ECF Nos. 60, 64, 68, the entire reason for amending the schedule was to obtain discovery about the prerecorded calls, and the court in the Underlying Action has now *twice* granted Plaintiff leave to file an amended complaint addressing those calls, *see* ECF Nos. 77, 79, 94, 95.

    **2.   Agreements and Communications with Allstate, Its Agencies, and Any Third-Party Vendors Involved in the Prerecorded Calls (Reqs. 5-10)**

    Subpoena Requests 5 through 7 seek all agreements between Everquote and Allstate or its agencies, and all communications with Allstate about promoting its products or services (*e.g.* instructions) or the Underlying Action. *Ex. 4* ¶¶ 5-7.  Requests 8 and 10 seek the agreements and communications with all third-parties involved in the prerecorded calls. *Id.* ¶¶ 8, 10.  Request 9 seeks all billing and payment records related to Everquote's agreements with Allstate, Allstate agencies, and any third-party vendors involved in the prerecorded calls. *Ex. 4* ¶ 9.

    It is settled that Allstate may be vicariously liable via agency or ratification for any calls Everquote or its vendors placed to generate leads on Allstate's behalf.  *See Bakov v. Consol. World Travel*, 2019 U.S. Dist. LEXIS 211399, * 15-21 (N.D. Ill. Dec. 9, 2019) (finding defendant vicariously liable for prerecorded telemarketing calls); *Braver v. NorthStar Alarm Services, LLC*, 2019 U.S. Dist. LEXIS 118080, at *17 (W.D. Okla. July 16, 2019) (same) (citing *In re Joint Petition Filed by Dish Network, LLC, et al. for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574 (2013) (hereinafter, "FCC 2013 Order")); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073-74 (9th Cir. 2019); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1254-55 (11th Cir. 2015).

    Classical agency turns on evidence reflecting whether "the principal [*i.e.* Allstate and/or Everquote] controlled . . . the purported agent [*i.e.* Everquote and/or other third-parties involved]." *Braver*, 2019 U.S. Dist. LEXIS 118080 at *17.  This requires evidence that will reveal if, over the course of the relationship, there were instances in which the principal "assess[ed] the agent's performance," or "provide[d] instructions to the agent," or threatened to or did "terminate the []relationship" for non-compliance.  *See id.* (quoting Restat 3d of Agency, § 1.01, cmt. f(1)). Similarly, "'[a] person may ratify an act . . . by receiving or retaining benefits it generates if the

person has knowledge of material facts,'" which "'. . . knowledge may be inferred' by circumstantial evidence" or evidence the principal "'. . . had knowledge of facts that would have led a reasonable person to investigate further[.]'" *Henderson*, 918 F.3d at 1075 (quoting Restat 3d of Agency, § 4.01 cmt. g, § 4.06 cmts. b, d).

When it comes to evidence of agency, communications throughout the course of the relationship are the gold-standard and their probative value is unmatched. *See, e.g.*, *Braver*, 2019 U.S. Dist. LEXIS 118080 at *22-24 (granting summary judgment for plaintiff and class on classical agency, finding control established largely by interactions revealed in email communications).

The agreements and related communications between Everquote and Allstate or its agents will bear on whether there was an agency relationship and Allstate's knowledge of material facts relevant to ratification.  The billing materials will reflect whether Allstate or its agencies paid Everquote to make those calls, and generally who was involved, how, and what they knew.

Thus, those materials are directly relevant to the issue of vicarious liability—irrespective of whether Everquote is named as a defendant in the Underlying Action.  *See Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 746 F. App'x 460, 463 (6th Cir. 2018) (reversing summary judgment in TCPA class action, holding defendant MFC may be liable for faxes sent by non-party B2B because "a reasonable juror could have concluded that MFC edited the fax ads, approved the final drafts, and paid for them").  Instructions related to the calls are also relevant to Allstate's prior express consent defense and class certification issues such as commonality and predominance.  *See Henderson v. United Student Aid Funds, Inc.*, 2015 U.S. Dist. LEXIS 107342, at *22 (S.D. Cal. July 28, 2015) (holding request for "agreements with and instructions to collection vendors also relates to USA Funds' affirmative defense of prior express consent and other class certification

109056_7

issues, and meets FRCP 26's relevancy requirement"). To be clear, Allstate's communications with Everquote are relevant to determine Allstate's liability or lack of liability for the prerecorded calls.

Similarly, Requests 8 and 10 seek all agreements and communications with any third-party vendor(s) Everquote used in connection with the prerecorded calls. *Ex. 4* ¶¶ 8, 10. Everquote's agreements and communications with those vendors are relevant to the vendors' relationship with Everquote, Allstate and its agencies, and everyone's knowledge of material facts. So too with respect to the billing materials, which will also show whether Everquote paid the vendors to make the calls. Thus, all of those materials are directly relevant to agency, ratification, and vicarious liability. In addition, even if Everquote did not place the prerecorded calls, Everquote's agreements and communications with the third-party vendors who did will confirm that fact and identify those vendors. The materials are separately relevant for this reason as well.

Moreover, the billing materials are also highly relevant to the merits and class certification because they will identify the leads (*i.e.* members of the prerecorded call class) and their phone numbers that were called on behalf of Allstate, and how many prerecorded calls were made to each number. *See Gebka v. Allstate Corp.*, No. 19-cv-06662, 2021 U.S. Dist. LEXIS 41078, at \*22-23 (N.D. Ill. Mar. 4, 2021) (order from Underlying Action compelling production of billing materials identifying leads generated by third-party lead generator analogous to Everquote even though documents did not identify entity who made alleged calls, holding the materials "are relevant in their unredacted form to: (1) the size of the putative class (numerosity); (2) the fact that putative class members experienced common treatment (commonality); and (3) the fact that Gebka's claim is typical of the claims of other putative class members"); *Donnelly v. NCO Financial Systems*, 263 F.R.D. 500, 503-04 (N.D. Ill. 2009) (TCPA case compelling production of "list of all persons

. . . called on cellular telephones" because "discovery aimed at ascertaining a potential class list is proper"); *Taylor v. Universal Auto Grp. I, Inc.*, 2015 U.S. Dist. LEXIS 66083, at *8, *17 (S.D. Ohio May 20, 2015) (TCPA case compelling non-party to produce all documents, communications, emails and databases that refer to or comprise lists of persons and telephone numbers called).

Furthermore, the relevant agreements and interactions reflecting the dynamic of monitoring, periodic assessment, and feedback necessarily begin near the *inception* of the relationship. *See* Restatement (Third) of Agency § 2.01 cmt. c ("A principal's communications to an agent begin with an initial expression granting authority, followed in many instances by instructions or directions that clarify matters, prescribe in more specific terms what the principal wishes the agent to do, or reduce or enlarge the scope of the agent's authority."). Thus, the email and other written communications revealing the relevant pattern of interactions demonstrating control will have started—and, depending on the longevity of the relationship and whether the interactions became in-person, may have also ceased—before the class period even began. Therefore, the time-frame of Requests 5, 6 and 8 is appropriate.

Cases like *Braver* and *Henderson* make clear that emails and other documentary exchanges are invariably the best evidence of control and knowledge of material facts. Email communications and their attachments, no doubt, comprise most if not all of the responsive communications Everquote refuses to produce. Absent extraordinary circumstances, there is little burden in exporting native emails from a server and producing them. It should take a moment to search for emails to and from Allstate, its agencies, and the relevant vendors, which is something virtually anyone who uses email can do. Everquote has offered no tangible details supporting its boilerplate "unduly burdensome" objections, and has not even advised Plaintiff how many

109056_7

responsive emails during the timeframe of these requests exists so the parties could identify any actual burden and work cooperatively to ameliorate it.  Therefore, Everquote's objections should be overruled and it should be ordered to comply with Requests 5 through 10.

### 3.  Source of the Telephone Numbers Called (Reqs. 4, 16-17)

Requests 4 and 16 ask Everquote to produce "[a]ll documents that identify the source" from which Plaintiff's and the putative class members' telephone numbers were obtained, all data obtained with the numbers, and all related communications with the source.  *Ex. 4* ¶¶ 4, 16. Request 17 seeks documents identifying any data fields or result codes in Everquote's records that reflect the source of the numbers.  *Id.* ¶ 17.

This evidence is critical to resolving Allstate's prior express consent defense.  That is, Allstate cannot establish that there was consent to call the phone numbers at issue without demonstrating ***how*** those numbers were obtained in the first place.

Where a TCPA defendant raises a prior express consent defense, documents related to consent are categorically relevant.  *See Henderson*, 2015 U.S. Dist. LEXIS 107342 at *21-22 ("Plaintiff's request for documents and information on prior express consent is relevant because USA Funds raised this defense in its answer and argues in its opposition that Plaintiff consented to the calls."); *Bellenger v. Accounts Receivable Mgmt.*, 2019 U.S. Dist. LEXIS 153672, *16-17 (S.D. Fla. 2019) ("if the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely").

The data and communications related to the source of the phone numbers is also necessary for class certification because consent is relevant to Plaintiff's proposed ATDS and prerecorded call classes.  *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (reversing denial of TCPA class certification reasoning, in part, that "in cases where, as here, a

sender 'obtained all of the fax recipients' fax numbers from a single purveyor of such information,'
there exists a 'class-wide means of establishing the lack of consent based on arguably applicable
federal regulations'"); *Bellenger*, 2019 U.S. Dist. LEXIS 153672 at *17 (holding defendant "must
produce whatever evidence of prior express consent it will use to rebut [plaintiff's] attempt to
establish predominance" under Rule 23(b)(3)); *Key v. Integrity Surveillance Sols., Inc.*, 2015 U.S.
Dist. LEXIS 163929, at *8, *11 (E.D. Mich. Dec. 8, 2015) ("Plaintiffs need the requested
information regarding . . . the way Integ and/or [non-party vendor] MyAutoBlast obtained their
numbers . . . and the type of data Integ and/or MyAutoBlast has regarding each person called to
establish the ability of the Court to identify class members," and thus, granting plaintiffs leave to
subpoena that data from MyAutoBlast); *Whiteamire Clinic, P.A., Inc. v. Quill Corporation*, 2013
U.S. Dist. LEXIS 136819, *9 (N.D. Ill. Sept. 24, 2013) ("the Court cannot permit Quill on one
hand to contest [TCPA] class certification and on the other hand deny plaintiff the discovery
relevant to its position that a class should be certified").

### 4. Class Lists and Related Data Dictionaries (Reqs. 18-19, 30)

Request 30 seeks records identifying all of the potential "leads" Allstate and its agencies
hired Everquote to generate or purchased from Everquote, as each of those people received at least
one prerecorded call and are therefore members of the prerecorded call class. *Ex. 4* ¶ 30. Request
18 asks for documents listing the columns (*i.e.* data fields) and defining the column headings in
any records responsive to that or any other request, and Request 19 seeks documents defining or
explaining the meaning of the different values or result codes used in each field. *Id.* ¶¶ 18-19.

Records that may identify class members or reflect the number of calls are extremely
relevant in TCPA cases. *See In re Collecto, Inc.*, 2016 U.S. Dist. LEXIS 92619, *4-5 (D. Mass.
2016) (compelling compliance with requests that "may indicate whether the plaintiffs can
effectively use the call logs and FACS database to identify a universe of potential class members,

which is an obvious prerequisite for any motion for class certification"); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540, 545 (6th Cir. 2014) (affirming class certification in TCPA case based on plaintiff's expert's analysis of fax records of third-party B2B who sent faxes).[3]

Accordingly, class records similar to those sought by Request 30 are routinely compelled from parties and non-parties alike in both TCPA and other class cases.  *See Gebka*, 2021 U.S. Dist. LEXIS 41078 at *21-22 (order from Underlying Action compelling production of communications identifying leads generated for Allstate by third-party lead generator analogous to Everquote, even where documents did not identify entity who made alleged calls, holding "[t]he pertinent question is not the name attached to the documents but rather, whether the documents contain information that 'bears relevance to the issues of class certification'"); *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 87 (D. Mass. 2008) (compelling non-party to produce relevant records sought by subpoena); *Addamax Corp. v. Open Software Found.*, 148 F.R.D. 462, 469 (D. Mass. 1993) (same); *Taylor*, 2015 U.S. Dist. LEXIS 66083 at *8, *17 (TCPA case compelling non-party to produce all documents, communications, emails and databases that refer to or comprise lists of persons and telephone numbers called); *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publrs., Inc.*, 36 F. Supp. 3d 417, 419 (S.D.N.Y. 2014) (TCPA case compelling non-party to comply with subpoena seeking records relevant to class issues); *Key*, 2015 U.S. Dist. LEXIS 163929 at *10-11 (not only compelling defendant to produce "a report or spreadsheet containing Integ's phone records during the relevant period of time for calls made to the phone numbers belonging to

---

[3] *Accord Henderson*, 2015 U.S. Dist. LEXIS 107342 at *21 ("Plaintiff's request for the outbound call list is reasonably calculated to identify the recipients and number of calls made during the class period, and thus is relevant to . . . numerosity and commonality."); *Martin v. Global Mktg. Research Servs.*, 2015 U.S. Dist. LEXIS 140530, *9-13 (M.D. Fla. 2015) (compelling compliance with discovery seeking class member names, telephone numbers, and dates and times of calls, holding this "information is plainly relevant to class certification" and "significant to Plaintiffs' ability to establish the ascertainability, numerosity, commonality, and typicality requirements"); *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582 at *6 (S.D. Cal. June 17, 2013) ("A request for an outbound dial list in a TCPA action is relevant to class certification issues, such as 'the number and ascertainability of potential class members.").

Plaintiffs and similarly situated consumers," but also granting plaintiffs leave to subpoena that data from third-party vendor MyAutoBlast); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 283-84 (N.D. Cal. 2015) (ordering TCPA defendant to reconstruct archived data into categories of information sought for each call, including phone number, date, time, dialer system and mode used, and the result of the call including notations made).

Although Everquote has not substantiated its burden objections with any specific details, Plaintiff is willing to review the electronic records to identify and retrieve the responsive subset so that there will be very little cost to Everquote.

Along the same lines, documents containing the information necessary for Plaintiff and his expert to understand the class records responsive to Request 30 is relevant for obvious reasons, and Everquote should be compelled to produce it as well pursuant to Requests 18 and 19. *See, e.g.*, *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 244 (N.D. Ohio 2017) (in ordering production of call log database, also holding that "Defendant must provide sufficient information to Plaintiff so that [Plaintiff's expert] can understand the database").

Therefore, the Court should order Everquote to comply with Requests 18, 19 and 30, and/or issue a rule to show cause for Everquote's failure to comply.

### 5.  Scripts for the Prerecorded Calls and Messages (Req. 15)

Request 15 seeks the scripts for the artificial or prerecorded voice calls and messages to Plaintiff and the putative class members. *Ex. 4* ¶ 15.  These documents are relevant to merits and class certification issues.  First, they will bear on the content of the calls, and thus, whether the calls constituted telemarketing or advertising under the TCPA.  Second, the scripts are relevant to vicarious liability in that Everquote or its vendors using scripts that Allstate or Allstate agencies provided or helped draft is relevant to whether there was an agency relationship, just as the vendors using scripts from Everquote is relevant to their agency relationship. *See Compressor Eng'g*, 746

14

F. App'x at 463.  Third, the scripts are relevant to class certification in that they will show that all prerecorded calls made in connection with the campaign were generally treated the same, thereby making it more likely that Plaintiff's claims are typical of the putative class members' claims. Thus, the Court should require compliance with this request as well.

### 6.   Policies, Practices and Procedures for the Prerecorded Calls (Reqs. 21-23)

Request 21 generally seeks documents that reflect the policies, practices and procedures applicable to the prerecorded calls at issue, and Requests 22 and 23, respectively, seek documents describing any "scrubbing" procedure used to determine whether the numbers called were cellular or on the National Do Not Call registry.  *Ex. 4* ¶¶ 21-23.

Any policies, practices and procedures applicable to the prerecorded calls are necessary for class certification because they will show that all of the prerecorded calls made were generally treated the same, which is relevant to whether Plaintiff's claims are typical of the putative class members' claims.  The policies, practices and procedures should therefore be compelled.

Those materials and the documents related to scrubbing procedures are also relevant to whether the violations were knowing or willful, and should therefore be produced for this reason as well.  *See Cabrera v. Gov't Emps. Ins. Co.*, 2014 U.S. Dist. LEXIS 90810, at *34 (S.D. Fla. July 3, 2014) (compelling production of policies, procedures and manuals relating to calls made using type of prohibited technology at issue in case); *Paul v. Syndicated Office Sys.*, 2013 U.S. Dist. LEXIS 191440, at *8 (S.D. Fla. Feb. 28, 2013) (same "[b]ecause the existence or lack of existence of policies concerning the TCPA may prove relevant to the Plaintiff's claim of willfulness").

### 7.   TCPA Compliance Documents Related to the Calls (Req. 24-26)

Requests 24-26 collectively ask Everquote to produce "[a]ll documents you sought, obtained, reviewed, or used to ensure the calls to [Plaintiff and the putative class members] complied with the Telephone Consumer Protection Act."  *Ex. 4* ¶¶ 24-26.

15

These documents are relevant to vicarious liability.  Not only will they reflect Everquote's knowledge regarding the existence and terms of the TCPA which goes to its knowledge of material facts for ratification, but also because the documents will reflect Allstate's, its agencies' and/or third-party vendors' knowledge of material facts to the extent those entities provided or received the documents, and possibly their willful ignorance if no such document exist, as well as control for classical agency.  *See Henderson*, 918 F.3d at 1075-76 (reversing summary judgment, holding "a reasonable jury could conclude that USA Funds accepted the benefits . . . of the . . . calls while knowing some of the calls may have violated the TCPA," in which case "USA Funds' acceptance of the benefits of the . . . unlawful practices would constitute ratification," particularly where USA Funds lacked policies to ensure its vendors complied with the TCPA).

Separately, any documents Everquote reviewed to ensure compliance with the TCPA—or the lack thereof—are also relevant to willfulness.  *See, e.g.*, *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (explaining that the "'willfullness' claim will . . . depend on defendant's general practices or procedures, or lack thereof").

### 8.  Everquote's Failure to Provide a Privilege Log

Everquote's boilerplate objections to all but one request claim it "expressly or impliedly seeks the production of documents and information protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or doctrine." *Ex. 4* ¶¶ 1-4, 6-7, 9-30.  And Everquote's document production is heavily redacted.[4]  Despite the objections and redactions, however, Everquote did not provide a privilege log.  This violates the rules.  *See* Fed. R. Civ. P. 45(e)(2)(A) (excepting no type of documents withheld on privilege

---

[4] Plaintiff agreed to maintain Everquote's production as attorneys' eyes only pending amendment of the Confidentiality Order in the Underlying Action to allow non-parties to designate documents "confidential."  Plaintiff will file the redacted documents under seal if the Court deems it necessary and so orders.

grounds from privilege log requirement); Fed. R. Civ. P. 26(b)(5)(A) (same); L.R., D. Mass. 34.1(e) (same).  The Court should deem Everquote's privilege objections waived and order all responsive documents to be produced without redactions, or compel Everquote to provide a privilege log.

        **WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order: **(A)** compelling EverQuote, Inc. to fully comply with Requests 4-10, 15-19, 21-26, and 30 in the subpoena served on it in the Underlying Action; **(B)** finding Everquote's privilege objections are waived and ordering it to produce all responsive documents without redactions, or alternatively compelling it to provide a privilege log; **(C)** directing Everquote to show cause why it should not be held in contempt for failing to comply with the subpoena in the first instance; and **(D)** awarding Plaintiff such additional relief as the Court deems just and proper.

Dated: June 9, 2021

<div style="margin-left:40%">

Respectfully Submitted,

THOMAS GEBKA, individually and on behalf of all others similarly situated, Plaintiffs

By: /s/ Anthony I. Paronich

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
(617) 485-0018
(508) 318-8100 (fax)
anthony@paronichlaw.com

Keith J. Keogh (pro hac vice pending)
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
***Attorneys for Plaintiff and the Putative Class***

</div>

<div style="text-align:center">17</div>

109056_7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 9, 2021, I caused a copy of the foregoing **Motion to Compel Compliance with Records Subpoena Issued by United States District Court for the Northern District of Illinois** to be served upon all counsel of record via electronic filing using the CM/ECF system.


 /s/ Anthony I. Paronich

109056_7